## UNITED STATES DISTRICT COURT
## FOR THE CENTRAL DISTRICT OF ILLINOIS
## PEORIA DIVISION

| | |
|---|---|
| GINA PURVIS, | ) |
|                 Plaintiff, | ) |
| v. | ) Case No. 05-1348 |
| THE BOARD OF EDUCATION OF HALL HIGH SCHOOL DISTRICT 502, DANIEL OEST, PATRICIA LUNN, GARY VICINI, THE CITY OF SPRING VALLEY, ILLINOIS, AND DOUGLAS BERNABEI, | ) |
|                 Defendants. | ) |

### ORDER

Before the Court is a Joint Motion to Dismiss by the City of Spring Valley and Douglas Bernabei and Motion for More Definite Statement [#27]. For the reasons set forth below, the Defendants' Motion to Dismiss and Motion for More Definite Statement [#27] are DENIED.

### JURISDICTION

This Court has jurisdiction over Plaintiff's § 1983 claims pursuant to 28 U.S.C. § 1331.

### BACKGROUND

The Complaint arises out of an unfortunate series of events.[1] The Plaintiff, Gina Purvis ("Purvis"), was a tenured Biology teacher at Hall High School ("Hall") in Spring Valley, Illinois. On and after November 10, 2004, Purvis was investigated, arrested, and indicted for sexual assault against her then 15-year-old male student, Mickey Ribas ("Ribas"). Purvis was suspended by the School Board with pay pending the outcome of the criminal proceedings. On

---

[1] Unless otherwise noted, all facts come from Plaintiff's Second Amended Complaint.

October 31, 2005, at the conclusion of a six-day bench trial, Purvis was acquitted of all charges. Purvis and the Board subsequently settled her employment dismissal.

This sordid tale begins back in the Spring of 2004 when Purvis and Ribas, who was her student at the time, became the subject of rumors that there was a sexual relationship between them. According to the Second Amended Complaint, Ribas and other fellow students spread false rumors that they were having a consensual sexual relationship, stating that they had sex at school, at Purvis's home, in her car, and in Ribas' home. As the rumors spread, Hall Principal Patricia Lunn ("Lunn") agreed with Daniel Oest ("Oest"), Superintendent of Hall, to allow Oest and Gary Vicini ("Vicini"), Dean of Students and head football and track coach, to investigate the rumors. Lunn and Vicini failed to inform Oest that Purvis had previously reported Vicini to Lunn for allegedly sexually harassing a female student in 2003.

On November 10, 2004, Oest and Vicini met with Ribas. Ribas denied any sexual relationship with Purvis. At that time, Vicini threatened Ribas with expulsion or jail if he did not admit that the rumors were true. To avoid punishment, Ribas was persuaded to say that the rumors were true. Vicini, rather than Lunn or Oest, reported Purvis to Chief Douglas Bernabei ("Bernabei") of the Spring Valley Police. Vicini did not inform Bernabei that Purvis had previously accused him of sexually harassing a female student. In turn, Bernabei notified DCFS, despite the fact that he was aware that Oest and Vicini had persuaded Ribas to change his story.

On November 11, 2004, Bernabei attempted to entrap Purvis by directing Ribas' mother to call Purvis. Bernabei supplied Ribas' mother with questions and listened in on another line. During this conversation, Purvis categorically denied a sexual relationship between her and

2

Ribas.  Bernabei intentionally failed to record this conversation and deliberately misrepresented the contents of the conversation in his testimony before the grand jury.

On November 16, 2004, DCFS scheduled a videotape interview with Ribas. Bernabei, despite limited training, insisted on conducting the interview himself.  No trained DCFS child sex abuse interrogator or other professionally trained child sexual abuse interrogator was present in the room to counsel or assist Ribas. After the interview, Bernabei informed Ribas not to speak to anyone without his knowledge or permission, including a later DCFS interview attempted by DCFS staff.  Furthermore, Bernabei had agreed to keep DCFS informed of all relevant information regarding the investigation, but deliberately failed to do so.

For purposes of obtaining an indictment against Purvis, Bernabei informed the state's attorney that he had determined that the first alleged sex act between Purvis and Ribas occurred in the classroom storage room a few days after February 9, 2004. Bernabei failed to inform the state's attorney that in the DCFS interview that he conducted, Ribas stated that the first sex act did not occur until after the week of February 13, 2004.  Also, Ribas informed Bernabei that he allegedly had sexual intercourse with Purvis on two occasions at her home, and that both times Ribas' father had dropped him off. Bernabei knew that Ribas's father could not corroborate those dates and times.

Bernabei failed to investigate the classroom storage area, where Ribas and Purvis allegedly had sex, until more than a year after he became aware of the matter. As a result, the alleged crime scene was altered and furniture was subsequently rearranged to be consistent Ribas' version of events.  Bernabei made no attempt to collect any forensic evidence from the storage room, including hair, semen, or fingerprints.  He also delayed his investigation of Purvis'

home and deliberately failed to search for forensic evidence or examine Purvis' home or classroom computer to corroborate Ribas' allegations of internet communications with Purvis. It was later discovered that, after the criminal investigation had begun, the hard drive in the computer in Purvis' classroom was altered and certain unspecified information was deleted from it by the school. Bernabei deliberately failed to investigate the deletion of this information.

Furthermore, Bernabei intentionally failed to examine Ribas' home computers, despite Ribas' claim that they contained evidence of communications between him and Purvis. After Purvis' defense attorney subpoenaed those computers, Ribas' mother told Bernabei that the hard drive on one of the computers had already been replaced. Although he knew of the subpoena, Bernabei did not immediately notify Purvis' attorneys of the deletion, and ordered no investigation into the destruction of the hard drive.

On or about February 16, 2005, the Illinois State Police examined the Ribas' family computers. However, Bernabei obstructed this examination by failing to inform the police about the previous replacement of the one hard drive. Only after the State Police issued their first report and Purvis' attorneys insisted that there be an investigation into the deletions did Bernabei order such an examination. In their second examination, the State Police found that over 16,000 computer files from the Ribas' home computers had been deleted after the subpoenas were served by Purvis' counsel.

Bernabei was aware that Ribas had posed as Purvis online, and that Ribas had at least one lengthy instant message conversation with Purvis' mother while posing as Purvis, during which Ribas learned of intimate details of Purvis' personal life. Bernabei was aware that Ribas relied

upon information obtained during this conversation to support his claim that he had an intimate relationship with Purvis.

Bernabei relied upon Ribas' statement that Purvis had given him a 10K gold chain. A gold chain was produced. However, during Purvis' criminal trial, the seller of the chain contradicted Ribas' testimony and testified that Purvis had not been the person who bought the chain. Ribas also introduced a sports wristband bearing Purvis' blurred handwriting into evidence, yet Bernabei ordered no chemical or forensic testing on the wristband and did not request a handwriting example from Purvis. Bernabei intentionally failed to provide this information during his grand jury testimony.

Ribas's story included the assertion that it had rained heavily the evening of one of the two times he had sex with Purvis at her home. Meteorological reports, however, disclosed that there was no rain on the dates alleged by Ribas. Prior to his grand jury testimony and the trial, Bernabei deliberately failed to obtain these reports. Bernabei also failed to thoroughly investigate Vicini and the alleged sexual harassment allegations that had previously been made against him. Bernabei failed to report any of this to DCFS, and deliberately failed to take into account Vicini's inherent bias towards Purvis. Furthermore, Bernabei relied on Ribas' claim that he had received other personal property from Purvis and ignored Purvis' claim that Ribas had stolen this personal property from her unsecured desk during her absence. Bernabei failed to investigate the alleged theft and remained silent while this property was used as evidence to support the charges against Purvis.

Bernabei had unreported additional meetings with Ribas and Vicini in preparation for Purvis's trial. Shortly before the trial, Bernabei persuaded Ribas to change and embellish his

story in order to make it more credible. Ribas had initially reported that he had ejaculated nine times in a two hour period the second time he had sex with Purvis. Bernabei informed Ribas that this was not credible, and coached Ribas to explain that he really did not intend to claim that he emitted semen nine times in one night. This meeting was not disclosed to defense counsel prior to trial.  Bernabei told Ribas that he needed to spread out the timing of the nine sexual acts and provide more physical details, as well as embellish details at trial after Bernabei had seen the inside of Purvis's home.

On February 22, 2006, Purvis filed her Second Amended Complaint in which she alleges that Bernabei violated her 14th Amendment rights to due process and equal protection. Purvis also seeks to hold the City of Spring Valley liable for these claims.  These Defendants have moved to dismiss the applicable portions of the Second Amended Complaint, and this Order follows.

## DISCUSSION

In response to Purvis's complaint, the Defendants have filed a joint motion pursuant to Rule 12(b)(6), claiming that Purvis fails to state claims for equal protection and due process violations.  Alternatively, Defendants move to dismiss Purvis's claim pursuant to Rule 8(a)(2), alleging that the complaint is "incomplete and ambiguous."  Finally, if the complaint is not dismissed under 12(b)(6), Defendants move for a more definite statement under Rule 12(e).

A complaint should not be dismissed unless it appears from the pleadings that the plaintiff could prove no set of facts in support of her claim which would entitle her to relief.  *See* Conley v. Gibson, 355 U.S. 41 (1957); Gould v. Artisoft, Inc., 1 F.3d 544, 548 (7th Cir. 1993).

Rather, a complaint should be construed broadly and liberally in conformity with the mandate in Federal Rule of Civil Procedure 8(f).

For purposes of a motion to dismiss, the complaint is construed in the light most favorable to the plaintiff; it's well-pleaded factual allegations are taken as true, and all reasonably-drawn inferences are drawn in favor of the plaintiff. *See* Albright v. Oliver, 510 U.S. 266, 268 (1994); Hishon v. King & Spalding, 467 U.S. 69 (1984); Lanigan v. Village of East Hazel Crest, 110 F.3d 467 (7th Cir. 1997); M.C.M. Partners, Inc. v. Andrews-Bartlett & Assoc., Inc., 62 F.3d 967, 969 (7th Cir. 1995); Early v. Bankers Life & Cas. Co., 959 F.2d 75 (7th Cir. 1992).

**Motion to Dismiss**

Section 1983 imposes liability where a defendant acts under color of a state law and the defendant's conduct violated the plaintiff's rights under the Constitution or laws of the United States. 42 U.S.C. § 1983. To establish a cause of action under § 1983, the plaintiff must allege (1) that the defendant has deprived her of a federal right, and (2) that the defendant acted under color of state law. Gomez v. Toledo, 446 U.S. 635, 640 (1980). In reviewing the complaint on a motion to dismiss, the plaintiff is only required to set forth these elements in a short plain statement showing that she is entitled to relief. Fed. R. Civ. P. 8(a)(2); Alvarado v. Litscher, 267 F.3d 648, 651 (7th Cir. 2001).

I.    *§ 1983 Due Process Claim*

Purvis first alleges that the Defendants violated her due process rights. Specifically, Purvis contends that Bernabei willfully ignored facts that shed considerable doubt on the credibility of Ribas' allegations, and that Bernabei withheld these and other facts from state

prosecutors and the grand jury. Purvis also asserts that Bernabei willfully failed to conduct adequate forensic examinations of key pieces of evidence, prevented Ribas from being interviewed by DCFS, and that Bernabei coerced changes to Ribas's story to inflate and distort details in the prosecution's favor. As a result of Bernabei's actions, Purvis claims that she was deprived of certain property and liberty interests, including her teaching position, loss of pay and benefits, attorney's fees and expenses in defending the criminal charges, and damage to her professional and personal reputation.

As Chief of Police, Bernabei was acting in his capacity as a state actor and therefore the only relevant issue is whether Purvis has adequately alleged a deprivation of a constitutional right. In order to establish that her Due Process rights were violated, a plaintiff must demonstrate (1) that the interest lost was a protected right under the Fourteenth Amendment; (2) that the loss amounted to a deprivation of that right, and; (3) that the deprivation was without due process of law. Polenz v. Parrott, 883 F.2d 551, 555 (7th Cir. 1989).

Here, Purvis has sufficiently pled the violation of her due process rights. Specifically, Purvis has alleged facts from which she could ultimately prove that she suffered a loss of property and liberty interests stemming from Bernabei's willful misconduct during the investigation. The Defendants argue that the Seventh Circuit does not recognize a constitutional right to an "adequate" police investigation. However, this argument is based on an overly narrow characterization of Purvis' complaint. Purvis does not merely argue that she had a right to an adequate investigation or that this right was violated. Rather, she contends that as a result of Bernabei's intentional and willful conduct, she was deprived of her property interests in her teaching position, pay, and benefits. She also maintains that Bernabei's willful misconduct

interfered with her right to defend herself by denying her a full, fair, and unbiased investigation and trial, as well as prevented her from being fully apprised of the charges against her.

Drawing all inferences in favor or Purvis, the gist of several due process violations is readily discernable. For example, this circuit has recognized a constitutional due process right to be free from prosecution based on falsified or tainted evidence. *See* Fox v. Tomczak, 2006 WL 1157466 (N.D. Ill 2006). In addition, Purvis had a constitutional due process right to a fair trial. If Bernabei intentionally withheld facts and evidence and improperly influenced witness testimony, the Court cannot rule out the possibility that this right was also violated. *See* Gomez v. Riccio, 2005 WL 2978955 (N.D. Ill. 2005). Consequently, Purvis has sufficiently plead a Due Process violation and is entitled to proceed to discovery against these Defendants. Therefore, Defendants' Motion to Dismiss the due process claims is denied.

## II.     § 1983 Equal Protection Claim

Purvis next brings an Equal Protection claim against these Defendants. Specifically, Purvis alleges that Bernabei intentionally treated Purvis, a female, differently than male suspects with no rational basis for the difference in treatment other than an illegitimate animus against her. In the Joint Motion to Dismiss, Defendants argue that Purvis has failed to sufficiently plead her claim.

Bernabei was acting in his capacity as a state official, so once again the only relevant question is whether Purvis' right to equal protection of the laws was violated. The Equal Protection Clause of the Fourteenth Amendment protects individuals from discriminatory administration and enforcement of the law. Jackson v. City of Moline, 2006 WL 1554075 (C.D. Ill. 2006). In a traditional Equal Protection claim, a plaintiff must demonstrate that (1) she is

otherwise similarly situated to members of the unprotected class; (2) she was treated differently from members of the unprotected class; and (3) the defendant acted with discriminatory intent. Greer v. Amesqua, 212 F.3d 358, 370 (7th Cir. 2000). The Seventh Circuit also recognizes Equal Protection claims brought by a "class of one" when (1) the plaintiff alleges that she has been intentionally treated differently from others similarly situated and; (2) there is no rational basis for the difference in treatment or the defendant was motivated by discriminatory animus. McDonald v. Village of Winnetka, 371 F.3d 992, 1001 (7th Cir. 2004).

In this case, Purvis pled that she is a member of a protected class (a female), that she is otherwise similarly situated to member of the unprotected class (alleged male suspects), that she was treated differently than members of the unprotected class, and that Bernabei acted with discriminatory animus towards her as there was no rational basis for the difference in treatment. She has also alleged that Bernabei was motivated by discriminatory animus. Therefore, Purvis has sufficiently pled either a traditional or a "class of one" equal protection claim for purposes of resolving this Motion to Dismiss.

Moreover, Defendants, if they refer to any case law at all, rely almost entirely on summary judgment standards, often referring to what Purvis most *prove*. However, this is a review of a motion to dismiss; all Purvis is required to do is sufficiently plead the elements of her claims. She has done so. As a result, Defendants' Motion to Dismiss is denied in this respect, and she is entitled to proceed to discovery on this claim as well.

III.  *§ 1983 Claims Against the City of Spring Valley*

Although there is no respondeat superior liability under § 1983, a municipality can be held liable under § 1983 if there is a showing of a law, policy, or procedure intended to violate a person's constitutional rights. Monell v. Dept. of Social Services, 436 U.S. 658 (1978). Here, Purvis has alleged that a discriminatory policy was in effect during the investigation and prosecution of her criminal charges. Specifically, she contends that Bernabei, as Chief of Police, is a policy-maker and decision-maker for the City and sets custom and policy for the City's police department. Purvis alleges that as a result of Bernabei's policy, her rights under the Fourteenth Amendment were violated. Drawing all inferences in favor of Purvis, as is required on a motion to dismiss, it can be readily understood that Purvis is asserting that there was a City policy in place that led to the deprivation of her constitutional rights. Therefore, since Purvis has sufficiently pled the existence of a custom or policy intended to violate her rights, in addition to successfully pleading her § 1983 claims, Defendants' Motion to Dismiss her claim against the City is also denied.

**Motion for a More Definite Statement**

Defendants move for a more definite statement pursuant to Rule 12(e), with respect to Purvis's Amended Complaint. However, the Court finds that Purvis's Second Amended Complaint is more than sufficient to put the Defendants on notice of the claims against them and that it is far from the type of vague or ambiguous pleading that Rule 12(e) is intended to address. It is not unreasonable to request Defendants to frame a responsive pleading, which they shall do within the next 14 days. Thus, the Court denies Defendants' alternative Motion for a More Definite Statement.

## CONCLUSION

For the above reasons, Defendants' Motion to Dismiss and Motion for a More Definite Statement [#27] are denied. Bernabei and the City shall file a response to the Second Amended Complaint within 14 days of the date of this Order.

ENTERED this 10th day of August, 2006.

                                                        s/ Michael M. Mihm
                                                        Michael M. Mihm
                                                        United States District Judge